MATTER OF F——

In SECTION 245 Proceedings

A-10620326

*Decided by Assistant Commissioner July 7, 1958*

**Adjustment of status—Section 245—Good moral character.**

(1) The standards in section 101(f) of the 1952 act will be taken into consideration in determining whether an applicant for adjustment of status under section 245 of the act has satisfied the administrative requirement that good moral character be established for the 5-year period preceding the filing of the application.

(2) Adjustment will not be granted in the case of a married man living in adultery.

## BEFORE THE ASSISTANT COMMISSIONER

**Discussion:** This case has been certified to the Assistant Commissioner, Examinations Division.

This is an appeal from the decision of the District Director at Detroit, Michigan, denying application for adjustment of status under section 245 of the Immigration and Nationality Act to that of a permanent resident. Denial was based on a finding that the applicant failed to establish that he is a person of good moral character.

The applicant is a 35-year-old married male, native and citizen of Germany, who was admitted to the United States June 25, 1955, as an exchange visitor. He was admitted for a period of one year to work and study as an intern. He served his internship in the Woman's Hospital, Detroit, Michigan, from July 1, 1955, to June 30, 1956. He then served as a resident physician at St. Joseph's Hospital, Parkersburg, West Virginia, from July 1, 1956, to June 30, 1957, and later in Blodgett Memorial Hospital, Grand Rapids, Michigan. He filed his application for adjustment of status June 26, 1957. Since his last extension of stay was granted August 8, 1956, he is not subject to the foreign residence requirement of Public Law 555, 84th Congress.

In his application he alleged that he is married; that his wife's name is M——; that they were married May 6, 1950; that they have 2 children, ages 5 and 6 years, respectively; and that his wife and

children reside in Germany. As evidence of his financial status, he submitted a letter from the Parkersburg National Bank, Parkersburg, West Virginia, stating that as of June 21, 1957, the records of that bank disclose a balance of a certain amount in the joint account of R——F——, M.D., or L——F——. When questioned about his marital status April 15, 1958, the applicant signed an affidavit stating that although he was still married to M——, he was then living as man and wife with E——W—— and that she is also married but not to him.

Section 245(a) of the Immigration and Nationality Act provides that:

The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence as a quota immigrant or as a nonquota immigrant under section 101(a)(27)(A), if (1) the alien makes application for adjustment, (2) the alien is admissible to the United States for permanent residence under this Act, (3) a quota or nonquota immigrant visa was immediately available to him at the time of his application for adjustment, (4) a quota or nonquota immigrant visa is immediately available to him at the time his application is approved, and (5) if claiming a nonquota status under section 101(a)(27)(A) he has been in the United States for at least one year prior to acquiring that status. A quota immigrant visa shall be considered immediately available for the purposes of this subsection only if the portion of the quota to which the alien is chargeable is undersubscribed by applicants registered on a consular waiting list. Any alien who shall file an application for adjustment of his status under this section shall thereby terminate his nonimmigrant status.

In addition to the basic requirements of this provision of law and the implementing regulations, we have required that the applicant establish good moral character for the 5 years prior to the filing of his application as a reasonable and proper basis, among others, for determining whether the Attorney General's discretion shall be exercised in a particular case (*Matter of H——R——*, A-10463832, 7 I. & N. Dec. 651). While section 101(f) of the act prevents a person from being regarded as a person of good moral character if, during the period for which good moral character is required to be established, he has committed adultery, an applicant for adjustment of status under section 245 is not precluded by that section from establishing good moral character as neither the law nor the implementing regulations include such a requirement (*Matter of N——*, A-4532071, 7 I. & N. Dec. 368). However, consideration should be given to the standards set forth in section 101(f) in determining whether the applicant is worthy of the relief requested by him.

On April 15, 1958, applicant admitted that he was a married man and that he was at that time living in adultery with a married woman, not his wife. In view of such conduct, the granting of his application for adjustment of status is not warranted. The action of the district director in denying the application was proper and the appeal will be dismissed.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.